34 P.3d 1059

**Jane DOE, Plaintiff–Appellant,**

v.

**John DOE, Defendant–Appellee.**

**No. 23130.**

Intermediate Court of Appeals of Hawai'i.

Oct. 18, 2001.

---

Charles K.Y. Khim, on the brief, Honolulu, for plaintiff-appellant.

BURNS, C.J., and FOLEY, J.; and WATANABE, J., Dissenting.

Opinion of the Court by FOLEY, J.

On January 3, 2000, per diem District Family Court Judge Paul T. Murakami of the Family Court of the First Circuit (family court) issued an "Order Regarding Plaintiff's Motion for Order to Show Cause Why Defendant Should Not Be Found in Contempt of Court" (Order), which ordered Defendant–Appellee John Doe (John Doe) to pay Plaintiff–Appellant Jane Doe (Jane Doe) arrearage for child support; arrearage for private school tuition, health care insurance premiums, and uninsured health care expenses for their children; and attorney's fees and costs. Jane Doe appeals the family court's failure to include post-judgment interest on the arrearage and the family court's denial of the calculation on a contingent fee[1] basis of Jane Doe's attorney's fees. Jane Doe contends that she is entitled to post-judgment interest pursuant to Hawaii Revised Statutes (HRS) § 478–3 (1993) and that contingent fee agreements should be permitted when a former spouse cannot afford to obtain legal counsel to pursue collection of child support arrearage without such an agreement.

We vacate the January 3, 2000, Order of the family court for its failure to include post-judgment interest and its denial of the calculation on a contingent fee percentage basis of Jane Doe's attorney's fees, and remand this case to the family court for further proceedings consistent with this opinion.

## I.

On April 25, 1989, the family court issued a Decree Granting Absolute Divorce and Awarding Child Custody (decree), which awarded child custody and child support to Jane Doe. The decree required John Doe to make monthly payments in the sum of six hundred dollars per child per month; pay for

1. A contingent fee is defined as "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court. Contingent fees are [usually] calculated as a per- centage of the client's net recovery (such as 25% of the recovery if the case is settled, and 33% if the case is won at trial)." *Black's Law Dictionary* 315 (7th ed.1999).

all medical, dental, and prescriptive drug expenses for the children; and pay the children's tuition at a private school. John Doe did not make all the required payments.

On July 26, 1999, Jane Doe brought a motion for an order to show cause why John Doe should not be found in contempt of court for failing to make payments as required under the decree.[2] In her motion, Jane Doe also asked the family court to order attorney's fees should the court find in her favor. In support of her request for attorney's fees, Jane Doe incorporated by reference her affidavit filed on July 21, 1999 (in a related motion), in which she asked for $19,189.00 in attorney's fees or approximately twenty-five percent of the total arrearage. In her "Written Summation" filed on September 30, 1999, before the bench trial, Jane Doe asked for attorney's fees of twenty-five percent of the amount recovered instead of the usual one-third contingent fee.[3]

On January 3, 2000, the family court entered the Order finding in favor of Jane Doe and awarding her the arrearage she sought from John Doe, but failed to include post-judgment interest in the Order. The Order denied Jane Doe's request that attorney's fees be calculated as a percentage of the total sums owed by John Doe, but stated that reasonable attorney's fees and costs would be awarded after her attorney submitted an affidavit setting forth his time spent on the case and the costs incurred.[4]

On February 1, 2000, Jane Doe filed an appeal of the Order. On March 31, 2000, pursuant to Hawai'i Family Court Rules Rule 52(a) (which requires entry of findings of fact and conclusions of law upon appeal of a family court matter), Judge Murakami issued his "Findings of Fact and Conclusions of Law, Re: Trial of September 28, 1999." In his findings of fact and conclusions of law, Judge Murakami held that Jane Doe was entitled to post-judgment interest at the statutory rate. Judge Murakami also made a finding of fact that attorney's fees "calculated as a percentage of the total amount of the sums owed by Defendant [are] against public policy."

## II.

■ Jane Doe contends the family court, in its Order, should have included post-judgment interest in the child support arrearage it ordered John Doe to pay her.

Hawaii Revised Statutes § 478–3 ("On judgment") mandates that "[i]nterest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit."

The family court made a finding of fact that:

[Jane Doe] is entitled to post-judgment interest as to the [principal amount in arrears] at statutory interest. *Lindsey v. Lindsey*, 6 Haw.App. 201[, 716 P.2d 496] (1986). However, no evidence was elicited at trial as to how much interest was to be included and the calculation and amounts of said interest.

The family court went on to make a conclusion of law that "[p]laintiff is entitled to post-judgment interest at the statutory rate, but that said amount must be quantified either by way of a further evidentiary hearing and/or stipulation."

---

2. Jane Doe asked for delinquent monthly child support from October 1997 through September 1999, delinquent medical insurance payments from 1989 through August 1999, delinquent medical cost payments from 1994 through August 1999, and delinquent school tuition payments from school years 1989–1990 through 1999–2000.

3. In "Plaintiff's Objections to Defendant's Proposed Order Regarding Plaintiff's Motion for Order to Show Cause Why Defendant Should Not Be Found in Contempt of Court," filed December 21, 1999, Jane Doe's counsel stated that "attorney's fees on a contingent fee basis of 33% were requested and agreed upon between Plaintiff [Jane Doe] and her counsel."

4. On December 9, 1999, Jane Doe's counsel submitted an affidavit detailing the 112.55 hours he spent preparing the case and seeking $29,309.71 in fees. On December 16, 1999, John Doe submitted objections to the affidavit. John Doe asserted that opposing counsel charged an unreasonably high hourly fee and spent an unreasonable amount of time preparing motions and preparing Jane Doe for the hearing. The family court, in its March 31, 2000, "Conclusions of Law," agreed with John Doe's objections and awarded fees of $15,260.00 (the family court did not award costs because Jane Doe's counsel did not submit an affidavit on costs).

Jane Doe is entitled to post-judgment interest on the child support arrearage John Doe owes. HRS § 478–3. "In the context of a divorce judgment which orders prospective child support payments in periodic installments, each such installment becomes a liquidated sum, and therefore susceptible of enforcement only after it becomes due and payment is not made." *Lindsey v. Lindsey,* 6 Haw.App. 201, 204, 716 P.2d 496, 499 (1986) (quoting *Smith v. Smith,* 643 S.W.2d 523, 524 (Tex.App.1982)).

On December 9, 1999, Jane Doe submitted to the family court a table detailing the amount of principal and interest due on the child support arrearage. The family court awarded precisely the amount of principal Jane Doe requested, but erred in failing to award interest on the principal. The family court is directed to calculate post-divorce decree interest due on the principal it awarded and to consider the table of interest submitted by Jane Doe on December 9, 1999.

### III.

Jane Doe contends the family court erred in concluding that her request for attorney's fees based on a contingent basis was against public policy. Hawai'i Rules of Professional Conduct (HRPC) Rule 1.5(d)(1) (Fees) states: "A lawyer shall not enter into an arrangement for, charge, or collect: (1) any fee, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support[.]" Comment 4 to the rule, however, expressly condones contingent agreements "to enforce or satisfy a judgment for ... past due alimony or child support"—as in the case at hand.

The Illinois Appellate Court in *Fletcher v. Fletcher,* 227 Ill.App.3d 194, 198, 591 N.E.2d 91, 94, 169 Ill.Dec. 211, 214 (1992), concluded that contingent fee agreements relating to the collection of back child support are enforceable and not against public policy.[5] Contingent fee agreements in these circumstances do not encourage divorce or hinder reconciliation by giving attorneys a financial interest in the outcome (the traditional public policy concerns with contingent fee agreements in family law matters). *Id.* "With the recognized national problem relating to the nonpayment of child support, public policy is best served by encouraging collection. Contingent fees might, in some cases, be the most effective tool in the collection." 227 Ill.App.3d at 200, 591 N.E.2d at 95, 169 Ill. Dec. at 215.

The family court erroneously denied Jane Doe's contingent fee agreement as being against public policy. The contingent fee agreement reached between Jane Doe and her attorney is enforceable between her and her attorney if it is not unreasonable and comports with HRPC Rule 1.5.[6]

Although a contingent fee agreement that comports with HRPC Rule 1.5 is enforceable only between an attorney and a client, and not against an adverse party, the Hawai'i Supreme Court has held it may be considered in determining reasonable attorneys' fees under a fee-shifting statute such as HRS § 571–52.7 (Supp.2000).[7] *Schefke v. Reliable*

---

5. See also, *Eastmond v. Earl,* 912 P.2d 994 (Utah App. 1996). Pursuant to a contingent fee contract, Eastmond represented a client in an action to collect back child support. The trial court granted summary judgment against Eastmond, holding that a contingent fee taken from child support is against public policy. The Utah Court of Appeals in *Eastmond* reversed, finding that "[b]ecause the Utah Supreme Court has allowed an attorney lien to be satisfied from a child support obligation, it follows that an attorney lien based upon a contingent fee agreement is permissible." *Id.* at 996.

6. Pursuant to HRPC Rule 1.5(c), contingent fee agreements are permissible as long as they are not otherwise prohibited by the rule or other law, are in writing, and

    state the method by which the fee is to be determined, including the percentage or per-

centages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

The actual contingent fee agreement between Jane Doe and her attorney was not attached as part of the record before us. Therefore, although such an agreement is not against public policy in the abstract, we do not reach the issue of whether the specific contract between Jane Doe and her attorney in this matter comports with Rule 1.5(c).

7. **§ 571–52.7 Award of costs and reasonable attorneys' fees.** Whenever a party files a motion seeking to enforce a child support order, the court may award the prevailing party the party's costs and reasonable attorneys' fees incurred,

*Collection Agency, Ltd.*, 96 Hawai'i 408, 452, 32 P.3d 52, 96 (2001).

In enacting HRS § 571–52.7, the legislature authorized a prevailing party enforcing a child support order to collect reasonable attorneys' fees from an adverse party. The legislature recognized that the financial "hardship of paying attorneys' fees often prevents women from seeking judicial enforcement of a child support order." Sen. Stand. Comm. Rep. No. 2779, in 1994 Senate Journal, at 1102.

■ Hawaii Revised Statutes § 571–52.7 was enacted because

> many people of limited financial resources are forced to go to court to enforce a child support order ... [and] providing statutory authority for an award of reasonable fees in such cases will encourage delinquent parents to pay past due support before they become liable for additional charges. In addition, more attorneys may be willing to accept cases on behalf of the parent who is owed support if an award of fees becomes a regular feature of the action.

Hse. Stand. Comm. Rep. No. 558–94, in 1994 House Journal, at 1084.

In *Schefke*, the Hawai'i Supreme Court held:

> [A] "reasonable fee" under Hawai'i fee-shifting statutes is an amount of fees that "would attract competent counsel," in light of all the circumstances, and that under certain circumstances the lodestar fee [8] may be multiplied by a factor to achieve a "reasonable" award of fees.

*Id.* at 452, 32 P.3d at 96 (citation omitted and footnote added).

■ The family court erred in limiting Jane Doe's award of attorney's fees to a lodestar amount with no consideration given to a contingent fee enhancement. Hawaii Revised Statutes § 571–52.7 is a fee-shifting statute designed to "attract competent counsel," and a contingent fee enhancement should have at least been considered by the family court.

In her dissent, Judge Watanabe disagrees that *Schefke* requires the family court to consider a contingent fee enhancement under HRS § 571–52.7. Judge Watanabe cites the following language in *Schefke* to support this position:

> We note that this holding applies only to statutes with fee-shifting provisions enacted to "encourage the enforcement of ... law through lawsuits filed by private persons." [*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*], 483 U.S. [711,] 737[, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)] (Blackmun, J., dissenting). For example, the holding is inapplicable to attorney's fees under HRS § 607–14 (1993), which authorizes courts to award reasonable attorney's fees to the prevailing party "in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee."

*Schefke*, at 454, 32 P.3d at 98.

The award of attorneys' fees in *Schefke* was pursuant to HRS §§ 378–5(c) (1993) and

---

except as this chapter otherwise provides. The award shall be made only when the prevailing party was represented by an attorney.

**8.** Recently, in *Schefke*, the Hawai'i Supreme Court stated that the lodestar fee or amount equals the number of hours counsel spent on the case multiplied by counsel's hourly rate. *Id.* at 443, 32 P.3d at 87. Previously, the Hawai'i Supreme Court had stated that the lodestar fee or amount was calculated as follows:

> In essence, the initial inquiry is "how many hours were spent in what manner by which attorneys." [*Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161,] 167 [(3d Cir.1973) ]. The determination of time spent in performing services "within appropriately specific categories," *id.*, is followed by an estimate of its worth. "The value of an attorney's time generally is reflected in his normal billing rate." *Id.* But it may be "necessary to use several different rates for the different attorneys" and the reasonable rate of compensation may differ "for different activities." *Id.* And when the hourly rate reached through the foregoing analysis is applied to the actual hours worked, a "reasonably objective basis for valuing an attorney's services" is derived. *Id.* The inquiry, however, does not end here, for other factors must be considered. The product of the first and second steps nevertheless serves as the "lodestar" of the ultimate fee award. *Id.* at 168.

*Montalvo v. Chang*, 64 Haw. 345, 358–59, 641 P.2d 1321, 1331 (1982); *Chun v. Bd. of Trustees of E.R.S.*, 92 Hawai'i 432, 441–42, 992 P.2d 127, 136–37 (2000).

388–11(c) (1997). Hawaii Revised Statutes § 378–5(c) is to encourage the enforcement of law that prohibits discriminatory employment practices as set forth in HRS §§ 578–1 through 578–10 (1993 & Supp.2000). Hawaii Revised Statutes § 388–11(c) is to encourage the enforcement of law requiring employers to pay earned wages to employees as set forth in HRS §§ 388–1 through 388–13 (1993 & Supp.2000).

We conclude the fee-shifting statute at issue in this case (HRS § 571–52.7) is more akin to the fee-shifting statute HRS § 388–11(c) than to HRS § 607–14 (1993), cited by Judge Watanabe, that concerns "actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee." Hawaii Revised Statutes § 571–52.7 was enacted to encourage the enforcement of law that requires compliance with child support orders as set forth in HRS §§ 571–41 through 571–57 (1993 & Supp.2000).

## IV.

The January 3, 2000, "Order Regarding Plaintiff's Motion for Order to Show Cause Why Defendant Should Not Be Found in Contempt of Court" is vacated as it pertains to post-judgment interest on the child support arrearage due and the denial of the calculation on a contingent fee percentage basis of Jane Doe's attorney's fees, and this case is remanded to the family court for further proceedings consistent with this opinion.

### Dissenting Opinion by WATANABE, J.

I respectfully disagree with the majority's conclusion that in light of *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 32 P.3d 52 (2001), "[t]he family court erred in limiting [Plaintiff–Appellant Jane Doe's (Jane Doe)] award of attorney's fees to a lodestar amount with no consideration given to a contingent fee enhancement." Majority Opinion at 164, 34 P.3d at 1063. In my opinion, the principles regarding contingency enhancements of attorney's fee awards espoused by the Hawai'i Supreme Court in *Schefke* are not applicable to the facts of this case.

In *Schefke*, the trial court, based on Hawaii Revised Statutes (HRS) §§ 378–5(c) (1993) and 388–11(c) (Supp.2000), awarded the

plaintiff attorney's fees and costs totaling $92,567.16 for prevailing on a claim that he suffered retaliation by his employer after he filed an employment discrimination claim with the Hawai'i Civil Rights Commission. Hawaii Revised Statutes § 378–5(c) provides:

In any action brought under this part, the court, in addition to any judgment awarded to the plaintiff or plaintiffs, shall allow costs of action, including costs of fees of any nature and reasonable attorney's fees, to be paid by the defendant.

Hawaii Revised Statutes § 388–11(c) states, in relevant part:

(c) The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow interest of six per cent per year from the date the wages were due, costs of action, including costs of fees of any nature, and reasonable attorney's fees, to be paid by the defendant.

The Hawai'i Supreme Court held that when an attorney has entered into a contingent fee arrangement with his or her client, a trial court may enhance an award of reasonable attorney's fees under a fee-shifting statute such as HRS §§ 378–5(c) and 388–11(c). However, the supreme court specifically limited its holding as follows:

We note that this holding applies only to statutes with fee-shifting provisions enacted to "encourage the enforcement of ... law through lawsuits filed by private persons." [*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*;] 483 U.S. [711,] 737[, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ] (Blackmun, J., dissenting). For example, the holding is inapplicable to attorney's fees under HRS § 607–14 (1993), which authorizes courts to award reasonable attorney's fees to the prevailing party "in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee."

*Schefke*, at 454, 32 P.3d at 98.

This case did not involve "the enforcement of ... law through lawsuits filed by private persons." Rather, it was more akin to an assumpsit action or an action on a promissory note or other contract in writing, since Jane Doe already had an order establishing child support and brought this lawsuit to

enforce the obligation of Defendant–Appellee John Doe (John Doe) to pay child support under the prior court order. Accordingly, I do not believe that *Schefke* is applicable. Since I believe that the record on appeal contains substantial evidence to support the reasonableness of the Family Court of the First Circuit's (the family court) award of attorney's fees to Jane Doe's counsel, I would affirm that part of the family court's January 3, 2000 "Order Regarding [Jane Doe's] Motion for Order to Show Cause Why [John Doe] Should Not Be Found in Contempt of Court" that awarded Jane Doe attorney's fees.